UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                  Case Nos.: 3:18cr91/RV/GRJ
                                              3:20cv5442/RV/GRJ
HENRY W. ROYER

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Petitioner Henry W. Royer's

"Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

by a Person in Federal Custody."    (ECF No. 75.)    The Government has

filed a response (ECF No. 80) and Royer has filed a reply (ECF No. 83).

The parties also filed supplemental responses pursuant to this court's order

(ECF Nos. 117, 118).    The case was referred to the undersigned for the

issuance of all preliminary orders and any recommendations to the district

court regarding dispositive matters.    *See* N.D. Fla. Loc. R. 72.2(B); *see

also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).    After a review of the record

and the arguments presented, the undersigned recommends that the

§ 2255 petition be denied without a hearing because Royer's claims of

ineffective assistance of counsel are without merit.    *See* Rules 8(a) and

(b), Rules Governing Section 2255 Proceedings.

## I.    PROCEDURAL HISTORY

On November 27, 2018 Royer was charged in a two count

superseding indictment with conspiracy to distribute five kilograms or more

of a mixture and substance containing unlawfully imported cocaine in

violation of 21 U.S.C. § 963, and conspiracy to distribute and possess with

intent to distribute five kilograms or more of cocaine in violation of 21

U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) (ECF No. 18).[1]    Royer, a

decorated Army veteran and member of the Army National Guard, helped

finance the importation of ten (10) kilograms of cocaine on a military flight

from Colombia.    Master Sergeant Daniel Gould purchased the cocaine

from Colombian national Gustavo Pareja and orchestrated the transport.

Royer and Gould attempted to transport a second load, containing 40

kilograms of cocaine secreted in gutted-out punching bags, but it was

intercepted before it could be transported.    Royer pled guilty to both

---

[1] Two co-defendants, Daniel Gould and Gustavo A. Pareja, were identically charged (ECF No. 18).    Only Gould was charged in the original indictment (ECF No. 1).

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

conspiracy charges on February 6, 2019, pursuant to a written plea agreement and factual basis.    (ECF Nos. 47-49, 77.)    Pursuant to the agreement, he admitted to violating 21 U.S.C. §§ 959(a), 963, 841(a) and 846, and he acknowledged that he faced a mandatory ten-year sentence on each count.    (ECF No. 47 at 1-2.)    He also acknowledged that "any prediction of the sentence that may be imposed is not a guarantee or binding promise."    (*Id.* at 5).    Appointed attorney Christopher Rabby, Esq. represented Royer throughout the proceedings.

Royer's Revised Final Presentence Investigation Report ("PSR") grouped the two offenses for guidelines calculation purposes.    (ECF No. 69, PSR ¶ 49.).    Royer had a base offense level of 34 because the offense involved at least 50 kilograms of cocaine.    (PSR ¶ 50.)    He received a two-level increase because the conspirators used a military aircraft to import the cocaine, and a three-level decrease for acceptance of responsibility, yielding a total offense level of 33.    (PSR ¶s 51-59.)    Royer had no previous criminal history so his criminal history category was I. (PSR ¶ 63.)    The applicable advisory guidelines range based on these calculations was 135 to 168 months.    (PSR ¶ 101.)

At sentencing, Royer argued that the "safety valve" of 18 U.S.C. §

3553(f) should apply.    (ECF No. 78 at 3.)    The court sustained the

objection and applied a two-level reduction pursuant to U.S.S.G.

§ 2D1.1(b)(18).    (*Id.* at 5.)    The revised guidelines range became 108 to

135 months.    The court considered the myriad letters of reference and

recommendation counsel provided, including a lengthy letter from Royer

himself, as well as Royer's allocution and the Government's statements

before sentencing Royer to the bottom of the applicable range to 108

months' imprisonment.    (ECF No. 78 at 6-11.)    Before adjourning, the

court advised Royer of his appellate rights and deadlines, as well as the

fact that the clerk could immediately file a Notice of Appeal upon request.

(*Id.* at 14.)

Royer did not appeal, but timely filed the instant § 2255 petition on

April 28, 2020.    (ECF No. 75 at 1.)    Royer's petition raises multiple claims

of ineffective assistance of counsel, which are separated into four grounds

for relief.    The Government opposes the petition in its entirety.

## II.    DISCUSSION

### A. <u>General Standard of Review</u>

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).    A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

Ineffective assistance of counsel claims are properly raised in a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an

objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance."   *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets, and citations omitted)[2]; *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2.

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result

must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).   Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance

of counsel);   *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*,

365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

### B. Royer's Claims

#### 1. Ineffective assistance of counsel with respect to an Appeal

Royer's claim, as set forth in his § 2255 motion

Royer's first claim alleges that Rabby failed to consult with him about an appeal and failed to file a direct appeal.   In Royer's original sworn motion, he complains only that Rabby did not file a timely Notice of Appeal. (ECF No. 75 at 13.)   Royer asserts that counsel failed to instruct him about available avenues to challenge his sentence both before and after his sentencing, and counsel failed to explain the "crucial significance of appellate filing deadlines."   (*Id.*)   He claims counsel led him to believe he would be sentenced to five years or less in prison,[3] so when the court

---

[3] Royer does not explain the basis for this belief. Royer's position, however, is completely contradicted by the written plea agreement he signed and by the response he gave under oath during the plea colloquy.   The plea agreement specifically provided that Royer faced a ten-year mandatory minimum on each count (ECF No. 47 at 2), a fact that was reiterated by the court at the change of plea hearing.   (ECF No. 77 at 11-12.)   The plea agreement also provided that any prediction of the sentence was "not a guarantee or binding promise" (ECF No. 47 at 5), and Royer admitted at sentencing that he understood neither his attorney nor the Government could promise or guarantee him a particular sentence and that no promises had been made as to his sentence or otherwise.   (ECF No. 77 at 12-13, 15.)   Royer's sworn statements in open court are presumptively trustworthy and are considered conclusive absent compelling evidence

pronounced the nine year term, he "strongly desired" to appeal his sentences and "made that desire known" to counsel.   (*Id.*)   However, counsel neither met later with Royer to discuss the direct appeal nor filed a timely Notice of Appeal "*per [Royer's] request.*"   (*Id.* (emphasis added).) Royer claims counsel's failure to (1) properly instruct him with respect to his appellate options and filing deadlines and (2) to file a timely notice of appeal constituted ineffective assistance of counsel.   (*Id.*)

      The Government's Response

      The Government asserts that Royer's contentions regarding counsel's failure to notify him of filing deadlines or failure to file a requested notice of appeal are "blatantly false."   (ECF No. 80 at 10-11.)   Christopher Rabby, Royer's former counsel, has submitted an affidavit in response to Royer's motion in which he unequivocally states that "Royer never asked me to file an Appeal/Notice of Appeal."   (ECF No. 80-1 at 1.)   Counsel also explains that after the court told Royer about the fourteen-day

---

showing otherwise. The subsequent presentation of conclusory and contradictory allegations, such as those presented here, does not suffice.   *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (citing *Blackledge*).   Furthermore, counsel denies having predicted a five-year sentence, or any particular sentence.   (ECF No. 80-1 at 3.)

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

appellate deadline, counsel again advised Royer of his appellate rights.
(*Id.*).    Additionally, Rabby mailed two post-sentencing letters dated May 1,
2019 and May 8, 2019 to Royer at his Fayetteville, North Carolina address,
which Royer had identified as his residence address at the change of plea
hearing.    (ECF No. 77 at 4.)

In the May 1 letter, Rabby reviewed what had happened at
sentencing and enumerated each component of Royer's sentence.    (ECF
No. 80-2 at 2.)    Notably, Rabby informed Royer he had fourteen days from
the date judgment was entered to file an appeal.    (*Id.*)    Rabby advised
Royer in the letter that an appeal would not result in a change in Royer's
low-end guideline sentence, but that if Royer wanted Rabby to file a notice
of appeal he should contact him "immediately."    (*Id.*)

Rabby sent the May 8 letter along with a copy of Royer's judgment.
(ECF No. 80-3 at 2.)    In the second letter, counsel again told Royer that if
he wanted to appeal he had fourteen days to do so. Rabby further
reiterated his opinion that Royer's sentence would be unlikely to change on
appeal, but that Royer had the right to appeal.    As he had in the first letter,

Rabby told Royer "[s]hould you wish for me to enter a Notice of Appeal, please contact me immediately." (*Id.*).

Rabby further points out that he and Royer had additional post-sentencing conversations and email communications following which Rabby filed a motion to extend Royer's self-report date to the Bureau of Prisons.   (ECF No. 80-1 at 2; ECF No. 71.)[4]   Notably, despite having communicated with Rabby post-sentencing about other matters of importance to him, the record reflects that Royer never asked counsel to appeal.   (*Id.*).

Royer's Reply

In his reply, Royer "stands firm" that Rabby never discussed his appellate options and denies having received the two letters Rabby mailed to him.   (ECF No. 83 at 7.)   He also insists that the only reference to his appeal was in an email where a "short appellate discussion was added on

---

[4] The extension was due to a pending Dissolution of Marriage hearing and Royer's desire to have his Invisalign braces removed from his teeth before reporting to prison.   (*See* ECF No. 71; ECF No. 83 at 10.)

the end of the email message"[5] and he asserts counsel never explained

the "critical nature" of the 14-day deadline.    (*Id.*).

At sentencing the court expressly advised Royer of the following:

> Mr. Royer, you're advised that you do have the right to appeal
> from the sentence and judgment I've imposed.    Any appeal
> has to be filed within 14 days.    If you're unable to afford the
> cost of an appeal you may apply for leave to appeal in forma
> pauperis which, if granted, will allow you to take an appeal
> without any cost to you.    And if you feel you have grounds for
> an appeal, upon request the clerk will immediately file a Notice
> of Appeal on your behalf.    But again, I remind you that any
> appeal has to be filed within 14 days.

(ECF No. 78 at 14.)    Royer was not taken into custody but was allowed to

voluntarily surrender approximately one month after sentencing.

---

[5] The Government has supplied a copy of the email Royer references.    (ECF No. 117-
1.)    The email, dated May 8, 2019, is identical to counsel's May 8 letter except for its
reference to the judgment as "attached" rather than "enclosed."    The pertinent
paragraph of counsel's email (and letter) reads as follows:

> Attached is the Judgment in your criminal case.    It specifically outlines
> your sentence.    If you have any questions or concerns, please do not
> hesitate co contact me.    Please be advised that you have fourteen (14)
> days in which to file an appeal, should you so desire.    The sentence
> imposed is the discretion of the sentencing court, so I do not think an
> appeal court would alter the sentence, but you do have that right.    Should
> you wish for me to enter a Notice of Appeal, please contact me
> immediately.

(ECF No. 117-1 at 2.)

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

Royer says that after he was sentenced, he "lapsed into a deep,
mental fog brought on by his severe PTSD" and that he, "lost in his own
tormented mind, could [neither] hear nor understand" the judge's advice
about his appellate rights.   (ECF No. 83 at 8.)   He says he stayed in this
"fog-like mental state" for roughly five months after his sentencing.   (*Id*.).
Thus, according to Royer, the email Rabby sent after sentencing "was
useless to [Royer] given his state of mind" and he was "hardly able to
process the information in the email at that time."   (*Id*.).   Royer suggests
that Rabby, "knowing [Royer's] fragile state of mind" should have ensured
Royer clearly understood his appellate options and the importance of the
14-day deadline.   (*Id*. at 9.)   Royer reiterates in a separate affidavit that
Rabby never personally discussed his appellate options, the appellate
procedure, or the applicable appellate deadline either before or after
sentencing.   (*Id*. at 10.)   According to Royer, it was not until months after
he was incarcerated that he "learned about [his] different appellate options
from other informed inmates…[and his] PTSD episode had subsided
enough that [he] could effectively understand them."   (*Id.*).   Royer's

description of these events is at odds with the statement in his original motion that he requested counsel file an appeal.

<u>Supplemental Submission</u>

The court conducted a preliminary review of the parties' submissions, and thereafter entered an order directing Royer to file a sworn supplement. (ECF No. 116.)   The order noted the evidence offered by the parties was at odds, and that while it is not unusual for recollection of events to differ, additional information would assist the court in determining whether an evidentiary hearing was necessary.   The order stated in part:

> In his sworn supplemental reply, Royer will be required to clarify if he intends to pursue his claim that counsel failed to file an appeal upon request, his claim that counsel failed to consult with him about an appeal, or both.   If Royer wishes to pursue any portion of Ground One, he will be required to set forth, in as much detail as possible, and **under penalty of perjury**, all discussions (and attempted discussions) he had with counsel regarding an appeal.   He must also specifically re-affirm his claim that he received neither of counsel's letters, even though each bears Royer's legal and residential address. [footnote omitted]   He should also state when he learned that no appeal had been filed and describe any attempts he made to follow up with Rabby or otherwise inquire about the lack of an appeal. Additionally, because Royer relies on his PTSD as part of the basis for his claim, he must explain the basis for his assertion

that counsel knew of his "fragile state of mind" (ECF No. 83 at 9).[6]

(ECF No. 116 at 4-5.)

Royer filed an affidavit that is only in partial compliance with the court's order. (ECF No. 118.) He clarifies that after sentencing, he walked out of the courtroom with his attorney and he "specifically asked him then to explain my options for an appeal." (*Id.* at 1.) Rabby told Royer he would call him, but during the week Royer remained in Florida he did not receive a call from counsel to explain the appeal process. (*Id.*) Conspicuously absent from the record is any evidence that Royer attempted to contact Rabby to follow up on this issue at any time.

With respect to counsel's knowledge of his mental health, Royer says that he had numerous discussions with Rabby about underlying behavioral health conditions as a result of Royer's combat service. (ECF No. 118 at 2.) He claims to have "brought up the topic of PTSD to [his] Presentence Recorder." (*Id.*) The PSR, however, mentions only a reference to

---

[6] This is particularly important given that Royer did not report his PTSD to the probation officer. (*See* ECF No. 62, PSR ¶'s 82, 83.)

"survivor's guilt" and that Royer "did not believe he needed" mental health

treatment.   (ECF No. 69, PSR ¶ 82.)   Furthermore, Royer's then-wife

"was not aware of any current or past mental or emotional health

condition." (*Id.*)   The probation officer nonetheless recommended Royer

receive a mental and emotional health screening "to ensure" Royer's

mental health was addressed and that he was "not suffering from any

ongoing mental health conditions." (*Id.* at ¶ 63.)[7]

Royer concludes by stating he wants the court to recognize his "claim

is not about a specific request to Mr. Rabby to submit an appeal."   (ECF

No. 118 at 3.)   This, of course, is in direct contradiction to his original,

sworn motion where he mentioned a "stated request" that counsel file a

notice of appeal.   (*See* ECF No. 75 at 13.)   Rather, he now complains

that counsel never called him to discuss his options, and that he only

learned of his "appellate options" months later from other inmates.   (ECF

No. 118 at 3.)   Importantly, at no point does Royer expressly state that he

---

[7] There is no record evidence indicating whether such an evaluation was ever completed.   Royer states in his supplemental affidavit that he sent an email to counsel advising that he had reached out to the Veterans Administration shortly after sentencing to meet with a behavioral health provider, but he learned he was ineligible for PTSD treatment due to his impending incarceration.

would have filed an appeal.    Nor does he suggest any specific grounds for

appeal, other than a general dissatisfaction with his guidelines sentence.[8]

Contrary to the court's order, Royer failed to provide any information about

any discussions or attempted discussions he had with Rabby about an

appeal.    Nor does Royer provide any information evidencing that he did

any follow-up regarding the appeal, despite his other post-sentencing

communications with counsel.

<u>Legal Standards Applicable to Claims Regarding Appeal</u>

A lawyer who disregards a client's specific instructions to file a notice

of appeal acts in a manner that is professionally unreasonable.    *Roe v.*

*Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriguez v. United States*,

395 U.S. 327 (1969); *Peguero v. United States*, 526 U.S. 23, 28 (1999)).

Because a defendant whose lawyer fails to file an appeal upon request has

been denied an entire judicial proceeding, prejudice is presumed and the

defendant is entitled to a belated appeal.    *Flores-Ortega,* 528 U.S. at 483;

*Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).    Even

---

[8] Co-defendants Gould and Pareja were sentenced to 108 months and 45 months, respectively (ECF Nos. 67-68, 114-115).   Gould pleaded guilty in December of 2018, almost two months before Royer entered his plea (ECF Nos. 40-42).   Pareja pleaded guilty in November of 2020 (ECF Nos. 101-103).

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

though Royer in his sworn statement stated that he asked counsel to file an

appeal, the supplemental filings make clear that Royer no longer asserts

that he asked counsel to file an appeal.    Because Royer's claim is no

longer that his counsel failed to file a notice of appeal despite a direction to

do so, the court must consider whether counsel consulted with Royer about

an appeal.    In *Flores-Ortega*, 528 U.S. at 478 the Court stated:

> We employ the term "consult" to convey a specific meaning -
> advising the defendant about the advantages and
> disadvantages of taking an appeal, and making a reasonable
> effort to discover the defendant's wishes.    If counsel has
> consulted with the defendant, the question of deficient
> performance is easily answered: Counsel performs in a
> professionally unreasonable manner only by failing to follow the
> defendant's express instructions with respect to an appeal
> (*citation omitted)*.    If counsel has not consulted with the
> defendant, the court must in turn ask a second, and subsidiary,
> question: whether counsel's failure to consult with the
> defendant itself constitutes deficient performance.

The *Flores-Ortega* Court rejected a bright-line rule that counsel must

always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed
> duty to consult with the defendant about an appeal when there
> is reason to think either (1) that a rational defendant would want
> to appeal (for example, because there are nonfrivolous grounds
> for appeal), or (2) that this particular defendant reasonably
> demonstrated to counsel that he was interested in appealing.
> In making this determination, courts must take into account all

> the information counsel knew or should have known . . . .
> Although not determinative, a highly relevant factor in this
> inquiry will be whether the conviction follows a trial or a guilty
> plea, both because a guilty plea reduces the scope of
> potentially appealable issues and because such a plea may
> indicate that the defendant seeks an end to judicial
> proceedings.

*Id.,* 528 U.S. at 480; *see also Devine v. United States*, 520 F.3d 1286 (11th

Cir. 2008) (finding counsel had no affirmative duty to consult with defendant

about an appeal where defendant was sentenced at the bottom of the

Sentencing Guidelines range after pleading guilty and waiving right to

appeal); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007) (defendant

who received sentence at low end of predicted guidelines range and had

not expressed desire to appeal failed to show prejudice).

In cases such as this one where the defendant no longer claims he

specifically instructed his counsel to file a notice of appeal, a *per se*

prejudice rule does not apply; rather, a defendant must demonstrate a

reasonable probability exists that, but for counsel's deficient performance,

he would have timely appealed.   *Flores-Ortega*, 528 U.S. at 484, 486;

*Thompson,* 504 F.3d at 1207; *Rios v. United States*, 783 F. App'x 886, 893

(11th Cir. 2019).   As discussed above, "[e]vidence that there were

nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485.   However, "[b]ecause a direct appeal of a federal conviction is a matter of right, *see Rodriquez v. United States*, 395 U.S. 327, 329-330 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal." *Thompson*, 504 F.3d at 1208 (citing *Flores-Ortega*, 528 U.S. at 485-86; *Gomez-Diaz*, 433 F.3d at 793).

In *Thompson*, the district court held an evidentiary hearing on Thompson's post-conviction claim that counsel failed to file an appeal. The testimony revealed that counsel had a post-sentencing exchange with his client, lasting no more than five minutes, during which counsel reiterated that defendant had a right to appeal, although in counsel's opinion an appeal would not be successful.   *Thompson*, 504 at 1207. The district court found that this brief consultation, which consisted only of notifying defendant of the right to appeal, as the court had already done, and offering his opinion that an appeal would not be successful "[did] not

equate to a failure to consult." *Id.* On appeal, however, the Eleventh

Circuit stated that the question of what constitutes adequate consultation is

not one of duration, but of content. The court held that the exchange in

that case did not suffice. *Id.* The court noted counsel had offered his

opinion that an appeal would not be successful, but the brief discussion

was not "consultation" in any meaningful sense, because counsel provided

no information from which the defendant could have intelligently and

knowingly either asserted or waived his right to an appeal. *Id*.

Furthermore, the record was clear that "no reasonable effort was made to

discover Thompson's informed wishes regarding an appeal." *Id.* Under

these circumstances, the court found that any waiver of defendant's right to

appeal was not knowing and voluntary. *Id.* Finally, because Thompson

had expressed dissatisfaction with what he perceived to be a disparate

sentence compared to his similarly situated co-defendants, there was a

reasonable probability that if counsel had adequately consulted with him,

he would have exercised his right to appeal. *Id.* at 1208.

There are some similarities between this case and *Thompson.*

Rabby "informed [Royer] of his appeal rights." (ECF No. 80-1 at 2.)

Rabby advised in his written correspondence to Royer that an appeal

would not be successful but told Royer he had the right to appeal and

counsel would file a notice of appeal upon request.   (ECF Nos. 80-2 at 2;

80-3 at 2.)   Royer claims to have expressed interest in, at minimum,

learning about his "options for an appeal."   (ECF No. 118 at 1.)   There is

no record evidence that any information was provided to Royer "from which

he could have intelligently and knowingly either asserted *or* waived his right

to an appeal."   *See Thompson*, 504 F. 3d at 1207.   Furthermore, there is

no evidence that Rabby discovered Royer's informed wishes regarding an

appeal.   *See id.*   While Rabby might have done more to consult with

Royer, the Court need not determine whether Rabby's letters and emails to

Royer were enough to fulfill Rabby's obligation to consult with Royer

because even if the consultation fell short, Royer is not entitled to relief on

this claim because Royer cannot demonstrate prejudice.

To show prejudice arising from counsel's failure to consult, Royer

must show that "there is a reasonable probability that, but for counsel's

deficient failure to consult with him about an appeal, he would have timely

appealed."   *Thompson*, 504 F. 3d at 1207 (quoting *Flores-Ortega*, 528

U.S. at 484).    Evidence that a defendant at some point demonstrated an interest in appealing is alone insufficient to support a finding that had he received reasonable advice from counsel he would have appealed.    *Rios*, 783 F. App'x at 893 (citing *Flores-Ortega*, 528 U.S. at 486)).    Notably, the record contains no evidence in support of this position, as Royer has never stated that he would have appealed.    Of course, whether there was a meritorious issue for appeal is not dispositive.    The only reason Royer suggests for appealing was his dissatisfaction with a sentence in excess of the five years. This reason, as set forth *supra* in note 3 was <u>not</u> reasonable.

In sum, while the record might support an argument that Rabby should have done more to consult with Royer to ascertain whether he wanted to appeal, Royer has failed to demonstrate prejudice and has not established a need for an evidentiary hearing.    *Diaz v. United States*, 799 F. App'x 685 (11th Cir. 2020) (finding defendant had not presented sufficient evidence showing that counsel failed to consult with him and affirming district court's decision not to hold an evidentiary hearing). Royer's assertion that he was expecting a sentence of five years is not reasonable nor credible.    This is particularly so in view of the fact that

Royer communicated with Rabby post-sentencing about other matters without broaching the subject of an appeal.   And there is no record support for a finding that there was a reasonable probability Royer would have appealed his sentence, particularly in view of the fact that Royer received a sentence at the low end of the guidelines range and below the statutory mandatory minimum.   For these reasons, there has been no violation of *Strickland* and Royer is not entitled to relief.

## 2.   Failure to object to admissibility of evidence

As his second ground for relief, Royer contends counsel was constitutionally ineffective because he failed to object to the admissibility of a recorded conversation between Royer and co-defendant Gould.   Royer believed the conversation showed entrapment, because Gould "manipulated, controlled, steered and directed the conversation" to obtain incriminating evidence against Royer (ECF No. 75 at 15).   Royer states he "repeatedly stressed this subject and directed his counsel to fight against the recording's admissibility."   (*Id.* at 14.).   Royer now complains about the admission of the recording into evidence and suggests that Rabby did not forcibly object to its admission.   (*Id.* at 15).

As the Government correctly points out the admissibility of the conversation is not relevant because Royer entered into a plea agreement. Furthermore, there is no merit to Royer's position because taping an inculpatory conversation after the commission of a criminal act does not meet the legal definition of "entrapment."    (ECF No. 80 at 12, n. 3.)    A successful "entrapment" defense requires proof of two elements: (1) Government inducement to take part in criminal conduct; and (2) lack of predisposition on the part of the defendant.    *United States v. Sistrunk*, 622 F. 3d 1328, 1333 (11th Cir. 2010).

Despite the claims made in his initial motion regarding motions or challenges he wanted counsel to make, Royer complains in his reply that he was "unaware" of pre-trial motion options, which made him "feel that he had no choice but to plead guilty."    (ECF No. 83 at 5.)    He claims that if he had known that evidence could be contested through tactical pre-trial motions, he would not have entered a plea agreement until learning the results of such motions.    (*Id.* at 5-6.)    If the motion to suppress had been successful, Royer states, he would have proceeded to trial.

Again, the contrast in the positions taken by Royer in his original motion versus in his reply markedly diminish his credibility.   Royer's original motion reflects he knew it was possible to try to exclude certain evidence in a criminal proceeding.   He states, for instance, that he requested that counsel "fight against the recording's admissibility," but counsel did not use the legal argument of either entrapment or inducement to exclude the evidence.   (ECF No. 75 at 14.)   Before Royer entered his plea, the district court advised Royer that if he pleaded guilty he would be waiving or giving up any possible defenses he had to the charges.   (ECF No. 77 at 8.)   Royer stated he understood.   (*Id.*)   Thus, the record demonstrates that Royer knew that neither entrapment nor inducement defenses would be available to him if he entered a guilty plea.   Royer also affirmed at the change of plea hearing that he was satisfied with the way counsel represented him and that he had no complaints about the way Rabby had handled this matter for him.   (*Id.* at 16.)   Royer's solemn declarations under oath are presumed true.   *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*).   Notably, these events took

place well before sentence was imposed, when Royer claims his PTSD "fog" set in.    Finally, Royer's suggestion he would have gone to trial, in light of a co-conspirator's cooperation with the Government, is questionable because proceeding to trieal would have resulted in an almost certain conviction and the loss of acceptance of responsibility, leading to an increased sentence.

Royer has not shown he is entitled to relief on this claim.

### 3.  Failure to Object to Witness Testimony

Royer next contends counsel was constitutionally ineffective because he did not object to the testimony of three key witnesses: (1) Mario, a mutual military friend of Royer and co-defendant Gould's; (2) "Chris," Gould's girlfriend who lived in Colombia; and (3) Gould's personal driver. (ECF No. 75 at 16.)    Royer asserts that given the witnesses' relationship to Gould, they would be motivated to protect Gould, and themselves, while casting blame on Royer.    Furthermore, according to Royer, the witnesses' knowledge was all second-hand hearsay, and Mario's testimony was suspect because he was a drug user.    Royer complains that by not

objecting to the testimony of the three witnesses, counsel "grossly and negligently weakened" Royer's defense.   (*Id.* at 17).

This claim fails for the same reason as the previous claim. Royer's guilty plea removed the question of the "admissibility" of any witness testimony, and he knew, by entering the plea, that he was waiving any defenses he might have.   Royer's claim also fails, according to the Government, because these prospective witnesses "were not ones the Government would even have utilized had there been a trial. " The Government advises that it already had "a cooperating defendant, financial and travel records corroborating the cooperating defendant, and fingerprint evidence that linked [Royer] to the offenses."   (ECF No. 80 at 12.)

In short, there is simply no basis for finding that counsel was constitutionally ineffective in this respect, and no relief is warranted.

### 4. Failure to Negotiate a Beneficial Plea and to Object to PSR

Royer's final claim contains two parts.   First, he claims that counsel was constitutionally ineffective because he did not negotiate a "beneficial plea agreement."   (ECF No. 75 at 18.)   He asserts that counsel's failure "significantly hurt" Royer at sentencing.   (*Id.*).   Royer says counsel led

him to believe that plea agreements in the Northern District of Florida were not subject to negotiation, although the court record is replete with examples of negotiated plea agreements in this division.   (*Id.*)

Royer does not specifically explain what he means by a "beneficial plea agreement." Contrary to Royer's assertion, In the Northern District of Florida the United States Attorney's Office does not negotiate specific sentences in advance.   *See United States v. Ziolowski*, Case 1:12cr12/MW/GRJ; 2017 WL 4477037 (N.D. Fl. 2017) ("unlike state court and some federal courts, the Government in the Northern District of Florida does not enter into plea agreements recommending a specific sentence and has not done so [for] for than twenty-five years.") (order adopting report and recommendation).   Typically, defendants are offered the opportunity to plead "straight up," or as charged in the indictment.   Alternatively, the Government may offer in some cases to dismiss a charge, typically one that would have carried a concurrent sentence.   Regardless of the nature of a defendant's plea, any defendant who enters a written agreement with the Government signs a document titled a "plea agreement."   The fact that

the document is an "agreement" should not be taken to suggest that a specific sentence was agreed upon, or that any charges were dismissed.

Furthermore, contrary to defendant's suggestion, there is a benefit to signing such a plea.   A defendant who pleads guilty typically receives a two or three-level reduction for acceptance of responsibility, has the opportunity to cooperate with the Government to further reduce his or her sentence, and may be eligible for the "safety valve," 18 U.S.C. § 3553(f). In this case, Royer received both a three-level reduction and credit for the safety valve, resulting in a sentence below the statutory mandatory minimum.   There is nothing in the record supporting Royer's suggestion that counsel could have "negotiated" a better agreement for his client, and thus there is no evidence that his counsel was constitutionally ineffective.

Next Royer contends that counsel performed deficiently by not raising three specific objections to the PSR.   According to Royer, counsel should have objected to: (1) the leadership role designation; (2) the drug quantity amount; and (3) Royer's role in organizing and securing a military aircraft for transportation.   The court will address each of these in turn.

First, neither the draft nor the revised final PSR contained a leadership role designation.   (*See* ECF No. 55, (draft) PSR ¶ 53, ECF No. 69, PSR ¶ 53.)   The final PSR contains the district court's handwritten note "3B1.3," near the paragraph pertaining to adjustment for role in the offense.   This guideline section, "Abuse of Position of Trust or Use of Special Skill," allows for a two-level increase, if applicable.   No points were assessed, however.   There was no factual basis for the objection Royer proposes, and therefore counsel was not constitutionally ineffective for failing to raise it.   *Hollis*, 958 F. 3d at 1124; *Brownlee*, 306 F. 3d at 1066.

Second, Royer claims that he should have been held accountable for 40 rather than 50 kilograms of cocaine.   Royer offers nothing in support of this position, and the record contains nothing.   The Factual Basis for Guilty Plea describes the conspirators' involvement with two separate loads of cocaine.   (ECF No. 48.)   The first load, which was delivered successfully from Colombia to the United States, contained ten (10) kilograms of cocaine.   (*Id.* at 2.)   The second load, which was intercepted by law enforcement, contained 40 kilograms of cocaine.   (*Id*. at 3.)   At his change of plea hearing, Royer stated under oath that he had carefully read

and reviewed the Factual Basis for Guilty Plea with counsel before signing it.    (ECF No. 77 at 14.)    He denied any disagreement with the factual basis, and readily admitted that the facts set forth therein were true.    (*Id.*) Royer has not shown any basis for a meritorious objection to the 50 kilograms of cocaine attributed to him,[9] and therefore counsel was not constitutionally ineffective. *Hollis*, 958 F. 3d at 1124; *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement).

Third, Royer claims counsel should have objected to the two-level adjustment pursuant to U.S.S.G. § 2D1.1(b)(3)(A) for use of an aircraft other than a regularly scheduled commercial air carrier to import a controlled substance.    It is undisputed that the conspirators used a military aircraft for each of the loads.    Consequently, the adjustment was properly applied, and counsel was not constitutionally ineffective for failing to object. *Hollis*, 958 F. 3d at 1124; *Lattimore*, 345 F. App'x at 508.

---

[9] The draft PSR determined the offense conduct involved 53 kilograms of cocaine (ECF No. 55, (draft) PSR ¶ 50), a figure that was reduced to 50 kilograms in the final PSR, per agreement of the parties.    (ECF No. 62, PSR ¶s 50, 128-130.)    It appears that 3 kilograms of packaging was included in the 53 kilogram amount.    (ECF No. 62, PSR ¶ 26.)

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

### III.   Conclusion

For the foregoing reasons, the court concludes that Royer has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore, Royer's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation

omitted).    It is therefore recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 75) should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 20th day of April 2021.


_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

Case Nos.: 3:18cr91/RV/GRJ; 3:20cv5442/RV/GRJ

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   An objecting party must serve a copy of its objections on all other parties.   A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**